[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint, which complaint was dated September 16, 1999 and returnable October 12, 1999, in which complaint the petitioner sought a dissolution of the marriage, a fair and equitable property settlement, a fair and equitable division of debt and such other relief as the court injustice and in equity believe are appropriate.
Attached to the complaint were the usual automatic orders and the return of the sheriff.
On October 5, 1999 the defendant filed an appearance by counsel. CT Page 6821 Thereafter there were filed motions to compel and sanctions, motions for failure to comply with discovery and motions of like nature.
Objections to the above-noted motions were also filed by counsel.
On May 30, 2000 the plaintiff filed a motion for exclusive use and possession of the marital residence pendente lite. This motion was denied by the court, Parker, J., on June 19, 2000.
On June 29, 2000 the defendant's counsel filed an objection to a motion for appraisal of real estate pendente lite and on June 30, 2000 the defendant filed an answer to the complaint and a cross complaint in which cross complaint the defendant asked that the court grant a dissolution of the marriage, a fair division of property and debts and alimony.
On August 28, 2000 the court, Kenefick, J., granted a motion allowing for the appraisal of the marital residence and real estate. No order was entered as concerns the costs incident thereto.
In August of 2000 interrogatories were filed and an extension incident to the same was also filed with the court.
An examination of the file therefore reflects that there were no pendente lite motions acted on by the court as concerns requests for temporary alimony as to either the plaintiff or the defendant to date of trial.
On May 8th, May 9th and May 10th the plaintiff, the defendant and their respective counsel appeared before the court with their witnesses and the matter was heard to a conclusion.
The court makes the following findings of fact:
The defendant's birth or maiden name was Gladys Lorena Pollock.
The plaintiff and the defendant were joined in marriage on May 20, 1970 at Norwich.
Both of the parties to this action have resided continuously in this state for more than one year next before the date of the complaint. The court has jurisdiction.
The marriage between the plaintiff and the defendant has irretrievably broken down with no reasonable prospect of reconciliation.
There was one child issue of this marital union, Diana Dorr, who is now CT Page 6822 an adult person being age 27.
There are no minor children at this time issue of this marriage.
No other children have been born to the defendant since the date of the marriage of the parties.
Neither party has been the recipient of State welfare or assistance or from any town, city or municipality or subdivision thereof.
This is the second marriage for the plaintiff petitioner; his first marital union ending in 1957, or in any event, according to his testimony, 13 years prior to the present union.
The plaintiff has two children issue of that prior marriage who are now adults, a daughter age 43 and a daughter age 42.
The defendant has children by a prior marriage; three children altogether.
After the present marriage was entered into some of the defendant's children of the first marital union resided with the plaintiff and the defendant for some time. There has apparently been no marital counseling in this marital union by either party.
While the defendant's children by a prior marriage resided with the plaintiff and the defendant, the defendant received some financial support from the children's father.
The plaintiff here indicated that he felt he had a good relationship with the defendant's children issue of that prior marriage, on balance, except for the defendant's minor son Michael who left the residence of the parties at age 15.
The plaintiff is age 64 having been born on January 14, 1937.
The defendant is age 58.
The plaintiff's testimony was to the effect that he has certain health considerations, that he is on medication for arrhythmia of the heart and has been for three years, and is on medication for a condition of cholesterol.
The plaintiff testified that he some time ago sustained a 20% loss of his right arm and rotator cuff. For this condition he takes an aspirin a day. The plaintiff described his condition as one where his heart beats CT Page 6823 too fast.
The plaintiff testified that he applied for life insurance ten years ago but was turned down.
The plaintiff's education extended through the tenth grade. The plaintiff attended the Meriden Police Academy prior to having employment with the Norwich Police Department.
According to the plaintiff the assets of the parties at the time of their marriage were zero.
The plaintiff was employed by the Norwich Police Department for a period of 14 years as a patrolman. His compensation during that time was $475.00 a week for 40 hours.
The plaintiff left his position with the Norwich Police Department in 1974 and entered into an automobile business at 747 Boswell Avenue in Norwich with another individual.
The plaintiff had apparently some skills in automotive matters having attended the Norwich Technical Institute for two years.
The plaintiff owned this garage for four years. The name of the business was Automotive World.
According to the plaintiff, the defendant handled the family's finances.
Subsequently the plaintiff went to work for Charles Cadillac, an automobile dealer in Norwich where he received $425.00 a week.
The plaintiff remained at Charles Cadillac for five years.
In 1990 the plaintiff left that facility and joined Goodwin Pontiac where he remained for one year. His compensation there was $425.00 a week gross.
Subsequently after leaving Goodwin, there was a period of 36 weeks where the plaintiff received unemployment compensation. At this point in time the plaintiff represents that he worked to some degree at the Occum Pizza restaurant facility. The plaintiff then went to work for Hurd Buick in Rhode Island as an assistant manager. The plaintiff was there for one year then the plaintiff joined Mallon Chevrolet in August after leaving Hurd Buick and has been there for the last nine years. He formerly received $10.65 an hour; now receives $11.65 an hour at Mallon Chevrolet. CT Page 6824
The plaintiff holds the title of assistant service manager.
The plaintiff has no other employment except Mallon Chevrolet.
Any monies or funds that he was entitled to by virtue of prior employment or the Norwich Police Department, he withdrew at the time that he left.
The plaintiff has a 401K at Mallon Chevrolet.
In 1999, according to the testimony, the plaintiff's 401K was worth $14,146.50.
In addition to his regular compensation the plaintiff receives a monthly bonus from Mallon Chevrolet in addition to his weekly compensation. The bonus is paid monthly. There has been some overtime in the past but the plaintiff says there is none now.
At the time that the parties were united in marriage the testimony was to the effect that the defendant was a part-time school bus driver. The defendant later worked at American Thermos.
According to the testimony, the financial practice between the parties initially was that the plaintiff gave the defendant his paycheck. Later, the plaintiff cashed his paychecks on his own and would subsequently give the defendant $200.00 a week for the purpose of running the home.
The defendant worked for a time as a waitress at Sheraton Motor Inn. According to the testimony the defendant has always worked outside of the marriage.
The plaintiff and the defendant always filed joint income tax returns until 1999.
The plaintiff represents that the single filing by each for the last federal and state return year 2000, cost him $3,000.00.
Apparently in some prior years the parties would receive refunds from their tax payments.
At the time of the marriage of the parties, they purchased a home in Norwich; this apparently shortly after they were married at 13 Elijah Street. This was a two-family house that cost $45,000.00. The defendant at that time had $10,000.00, received from her mother, and that was used incident to this purchase. Subsequently when the Elijah Street property CT Page 6825 was sold, the proceeds, including what the defendant had contributed, went into a purchase of property in the Town of Franklin.
Subsequently property at 30 Taftville-Occum Road was purchased for $100,000.00. Title was taken in both names; that since 1985.
According to the testimony of the plaintiff, the defendant incorporated a certain business known as Rena's Pizza without his knowledge. This allegedly occurring in 1991.
The plaintiff represented that he helped out in some respects with regard to the business activity conducted by the defendant; that he plowed snow and tended grounds or mowed the lawn.
The Occum pizza property was subsequently leased by the defendant.
It is the plaintiff's claim that the defendant has not provided him with any funds incident to the lease, which was undertaken by the defendant, which apparently occurred on April 4, 1996.
The plaintiff indicated that he also was not privy to, nor did he participate, in the preparation of the Occum property lease.
In due course the Occum property was sold by the defendant. The plaintiff claiming that he was not aware of the sale and never received any proceeds from the same.
The plaintiff testified as to the amount that he had provided to counsel as a retainer and the weekly remittances incident thereto to counsel.
The plaintiff has apparently been paying the defendant the sum of $108.00 on a weekly basis.
There was testimony by the plaintiff with regard to the frequency with which the defendant resides at the former marital home known as 43 Eager Road.
The plaintiff decided in 1999 to file a petition seeking a dissolution of the marriage, in his words, to salvage something from life.
The testimony was to the effect that in terms of warmth, affection or intimacy that that had not occurred for the last 15 years.
The plaintiff indicated that he had made a decision to try and lead a separate life. CT Page 6826
The plaintiff's relationship with one of the defendant's children, a son Michael, apparently was very poor. Apparently the young man Michael's conduct created some problems in the home, which the court need not dwell on, which apparently affected the relationship between the plaintiff and the defendant and in due course the defendant's child Michael was required to leave the premises.
The testimony was to the effect that at one point in time the defendant was involved in a restaurant or bar business located in the Town of Mansfield with one or more other persons but no further information was provided to the court.
At the location where the defendant presently operates and conducts her business known as Rena's Pizza, there are quarters above the location which were described as an efficiency apartment and apparently the defendant who puts in long hours at this business frequently and often stays there rather than returning to the marital home.
The plaintiff indicated that there were no problems pertaining to the immoderate use of alcohol in the marriage, nor any substance abuse.
The plaintiff testified that there was no domestic violence in the marital union.
The plaintiff testified as to a physical condition where he was required to undergo a colonoscopy a year ago and is required apparently to return from time to time for further treatment.
It was the plaintiff's claim that the defendant often times working to late hours in the evening that this contributed to problems in the marriage and the breakdown thereof.
The plaintiff acknowledged that the defendant was a very hard worker and that the parties enjoyed a fairly simple lifestyle, that the parties were not able to save much.
The plaintiff indicated, as noted above, that 15 years ago, in his words, each went their separate ways.
One of the plaintiff's laments was that the defendant condoned the actions of her son Michael and that the son of the defendant was not respectful to him.
The plaintiff acknowledged that the defendant worked long hours, seven days a week, over a period of many years. CT Page 6827
The name of the business conducted by the defendant, "Rena's", is a contraction of the defendant's middle name which is Lorena. While conducting her restaurant business, for a period of time the defendant used to provide the plaintiff and some of his associates with free food.
The mortgage encumbrance on the Eager Road property is the same mortgage encumbrance which was taken out 20 years ago. Apparently the plaintiff, although often requested to do so, refused to participate in any refinancing of the mortgage at the defendant's request. The court will touch on this point later in the memorandum.
The plaintiff testified that he does not drink and that he has no contact with any drugs.
The plaintiff indicated that he has a friend.
While the plaintiff was involved in the automotive activities, the defendant would often run errands for him and deliver parts.
Insofar as outstanding medical coverage is concerned for the parties, the defendant is only covered for dental not medical, the plaintiff having advised the defendant that if she wanted medical coverage she would have to pay for it.
The plaintiff acknowledged contrary to the information on his financial affidavit that he has a motorcycle which is worth $4,800.00; not the $1,200.00 reflected on his affidavit.
The plaintiff apparently served in the United States Navy during the period 1953 to 1957. The plaintiff, at least in the past, belonged to various and sundry motorcycle organizations.
The testimony was to the effect that the plaintiff associated himself with a motorcycle group known as the Huns.
The plaintiff indicated that in his automotive business, motorcycles were involved and that bikers did provide some portion of his business.
The plaintiff has a worker's compensation claim pending as concerns a shoulder disability where his claim is a 20% loss of movement. No hearings have yet been scheduled on that worker's compensation claim and the plaintiff continues to work at Mallon Chevrolet.
It was the plaintiff's testimony that while he rode with various motorcycle organizations that the defendant participated in this with CT Page 6828 him.
The defendant has no 401K. The defendant has a modest shareholding in Pfizer's.
The defendant apparently has never been on the plaintiff's health insurance since he has been with Mallon Chevrolet.
In response to a question put to the plaintiff by the court, the plaintiff indicated that in his view the parties have two separate attitudes and two separate opinions of life. The plaintiff made no claim that the defendant had ever deceived him.
The plaintiff indicated that he has a good relationship with the adult daughter Diana.
As noted earlier, the defendant oftentimes stays in the accommodations above the pizza facility that she operates; the premises being known as 217 West Town Street.
The testimony indicated that the plaintiff had a DWI arrest in past years, allegedly some time in the 1990's.
The defendant called Bridget Buscetto as a witness. This witness testified that she on occasion had been a creditor of the defendant and that the witness' husband had loaned money to the defendant.
This witness testified as to seeing the defendant at the defendant's place of business frequently; as frequently as every other day.
This witness acknowledged being a good friend to the defendant and has known the defendant for about 12 years.
This witness observed that the plaintiff, based on her observations, had never worked in either restaurant or pizza facility that the defendant operated.
This witness voluntarily appeared, indicated that she herself is not employed and has not been for the last two years.
Presumably as concerns her ability to loan funds to the defendant, the witness testified that her average compensation was $600.00± weekly.
This witness acknowledged that to the best of her knowledge and belief there were not any paper evidences of loans, no notes, checks or matters CT Page 6829 of like nature.
This witness testified that she was not aware of any improper relationship between the defendant and her spouse.
This witness testified that her current marriage was her third; acknowledged that the defendant had spent time in Florida at the residence of the witness and her husband.
The witness Michael Buscetto was offered on behalf of the defendant. This witness testified that he has known the defendant for 14 years.
He first met the defendant at the pizza facility operated by the defendant in Occum where he frequently had meals.
This witness testified that he had lent money to the defendant and verified making the loans shown on the defendant's financial affidavit.
The loans made by this witness to the defendant were for restaurant appliances as needed or required by the defendant. This witness Michael Buscetto has himself been in the restaurant business for over 20 years.
Among other loans this witness loaned the defendant $25,000.00 to rehabilitate the premises purchased from the Tamborra family. The loans were all made to the defendant and not to the plaintiff.
This witness Michael Buscetto testified that he observed that the defendant was experiencing problems in the conduct of her business and decided to help her. Michael Buscetto testified that none of the loans shown on her affidavit have been repaid to him to date.
His testimony was to the effect that the defendant endeavored to make some payments on the loans and the witness indicated that he relied on the defendant's trustworthiness and suggested that she take whatever funds were available to her and invest in stock of the Pfizer Corporation.
This witness Michael Buscetto would see the plaintiff at the two different restaurant locations operated by the defendant on various occasions.
The witness Michael Buscetto owns an establishment or corporation known as Michael's Dairy.
The loans made by Michael Buscetto to the defendant are apparently interest free. The witness does hold the Pfizer stock as security for the CT Page 6830 loans.
This witness has also loaned the defendant funds to pay her attorney and counsel and he hopes and expects in the future to be repaid.
This witness characterized the defendant as a very trustworthy person and he indicated that he has no interest of record in the establishment known as Rena's Pizza.
The witness denied that there was any romantic or intimate relationship between himself and the defendant.
This witness indicated that he makes no claim against the plaintiff or any asset owned by the plaintiff.
From the testimony of the defendant, Gladys L. Dorr, the court finds that she was born in New London, Connecticut and grew up locally, graduated from Norwich Free Academy in 1960.
The defendant was first married in 1961 at which time she was employed as a bookkeeper. There were three children issue of her first marriage. Among other tasks the defendant worked as a waitress in Virginia. The defendant's first husband was a gentleman in the military. The first marriage was dissolved pursuant to a divorce in 1966.
Between the date of the divorce and the date of the current marriage on May 20, 1970, the defendant was employed in various capacities; at one time drove a school bus; subsequently worked at the Thermos Corporation in Norwich; subsequently at the Sheraton Motor Inn.
At the time of her marriage to the plaintiff the defendant acknowledged that she had no assets of any consequence.
The defendant did periodically receive the sum of $60.00 a week as concerns child support for the three children issue of her first marital union. At the time of her present marriage the plaintiff had an automobile.
According to the testimony at that time, the plaintiff was paying $35.00 a week as concerns the plaintiff's obligation for child support incident to his first marriage.
In addition to the afore noted employment positions, the defendant worked at Interstate Foods; also, at an establishment known as Willy J's in Old Saybrook. CT Page 6831
At the time of her marriage to the plaintiff, the defendant's children were ages 4, 5 and 6. There was one child issue of this present marital union who was born in 1974. Oftentimes the defendant worked two jobs.
At the time of the parties being joined in marriage the plaintiff was a Norwich Police officer as a patrolman.
The defendant's testimony was to the effect that she assisted in helping him pay his child support obligation.
In 1974 the plaintiff went into the automotive business and automobile repair activities. This entity was known as Automotive World and was located in Norwich.
The defendant would assist in the conduct of the business in running for parts for which she received no specific compensation.
According to the testimony plaintiff's business failed because of inappropriate conduct on the part of the gentleman with whom he was associated and substantial debt was left at the plaintiff's door. At that time, according to the testimony, the Internal Revenue Service seized assets of both the plaintiff and the defendant due to the activities of the plaintiff's associate in the aforementioned business.
Subsequently the plaintiff operated another automobile oriented business in the Town of Baltic. There were many financial problems. The defendant testified that she was continually being obligated to pay leftover bills and debts from the Automotive World endeavor.
A lien was put on the home. Considerable strains of a financial nature were on the marriage.
In 1971 the parties had purchased a two-family residence on Elijah Street for $15,000.00. The down payment was $500.00. This property was sold in 1986. The plaintiff borrowing funds to achieve that purchase from one Richard Rothstein.
The testimony was to the effect that the defendant handled the family finances and that at one point in time the defendant's mother loaned her $10,000.00 with regard to the purchase of the property in Franklin. The purchase price was $54,000.00 plus there was a mortgage undertaken with the Norwich Savings Society which was actually in excess of the purchase price; to wit, $54,800.00.
The interest rate on the aforementioned mortgage with Norwich Savings Society was 14.75%; admittedly, a very high rate of interest. CT Page 6832
The testimony was to the effect that the plaintiff, for reasons which are hard to devine, would not agree to refinancing the mortgage and the rate of interest has continued to this date, manifestly to the betterment of the bank but not as to the owners.
Three years ago the defendant stopped staying at the marital home and residence on a full-time basis. The defendant stayed at an upstairs efficiency apartment over the restaurant activity which she was conducting on premises rented from the Tamborra family. The defendant slept there frequently. The efficiency apartment apparently lent itself to that purpose as well as being an office.
Subsequently a property in Occum was located or brought to the defendant's attention; the same in the process of foreclosure, and the defendant went out into the market place looking for a loan in order to try and secure the purchase of that property. Originally the defendant was associated with Jerry McGee but he subsequently withdrew from the proposal.
The defendant went to the New London Federal Savings who held the mortgage and arranged for financing as concerns the property which, as mentioned, was then in foreclosure. The defendant did all of the negotiation and made all of the arrangements. The plaintiff merely was a signatory to the financing.
The property in Occum acquired by the defendant and the plaintiff formally had been a grocery store. There were old appliances in the structure including two pizza ovens. There was subsequently an obligation to New London Federal further increasing the obligation to $100,000.00. The defendant exerted her best efforts in trying to get the premises in proper shape for business purposes including electrical work, air conditioning and matters of like nature.
The defendant's brothers helped her out with regard to the rehabilitation of the Occum property and the defendant has operated that business activity for 11 years. At one point incident to learning the trade so to speak, the defendant had guidance and instruction from a person by the name of Vidalitis.
The defendant's testimony was to the effect that she worked long hours, never had a day off, worked seven days a week.
The defendant's testimony was to the effect that while she worked hard and diligently that the plaintiff never gave her any meaningful help or assistance in the business. This was so even though the plaintiff had CT Page 6833 weekends off from his position and work but nevertheless did not assist the defendant.
In 1990 the defendant purchased another location; the facility is now known as Rena's Pizza. The defendant was fortunate in having experienced help in the conduct of her business.
In due course the Occum property was sold for $125,000.00.
The business at that location is now known as Universal Pizza. That property is now subject to a lease.
Incident to her present location the defendant assumed the prior operator's debt and obligation with the Tamborra family who apparently did not wish to foreclose the prior operator and cooperated with the defendant.
The defendant pays $1,800.00 monthly for the Rena's Pizza location pursuant to the terms of the lease.
The defendant's testimony is to the effect that the plaintiff did not participate in the conduct or activity of the Rena's Pizza location or activity.
The Rena's Pizza business is located in an area known as Yantic. The defendant is there all day, every day and characterized herself as a hard worker.
During the life of the marriage the defendant's testimony was to the effect that the plaintiff gave her $200.00 a week commencing in 1985 for household expenses.
The defendant stated that she never used any of the money given by the plaintiff to her for household purposes incident to her business activities with the restaurant.
At the present time the defendant testified that she pays herself $245.00 a week from the business activity. The defendant acknowledged recently spending $3,595.14 with regard to a trip to Florida where she stayed or had some contacts with the Buscetto family.
The lien on the marital home which was apparently just recently discovered is for less than $300.00 and had to do with a charge, an obligation to a local hospital, for a medical procedure that the defendant underwent in 1991. CT Page 6834
The defendant acknowledged that one of her children, her son Michael, was a troubled child and that she was not able to control him while the children lived with her and the plaintiff.
The defendant represented that the plaintiff gave no firm help or guidance with regard to assisting and monitoring the conduct of Michael.
The defendant has no present health insurance.
The defendant testified that the problems in the marriage started in 1984 when the plaintiff left his position with the police department.
The defendant's testimony was to the effect that the plaintiff frequented bars with male friends, that he kept company with a lady who was the wife of a mechanic near a garage operated at that time by the plaintiff. At one point the plaintiff packed his bags and left the residence; subsequently returned to see the then minor child issue of this marriage.
The defendant's testimony was to the effect that the plaintiff spent a lot of time on his motorcycle, watched soap operas, that he got tattoos and that he stayed at the clubhouse of a motorcycle group known as The Huns, that the plaintiff joined a motorcycle group known as The Combat Vets, that the plaintiff joined an organization known as The Relentless, that the plaintiff has never returned to, in her words, the marriage bed since 1985.
The defendant testified that she tried diligently to control the activities of her minor son Michael issue of her first marriage but to no avail and that the plaintiff did not in any way help or assist her as concerns those problems.
Neither party has resorted to counseling as concerns this admittedly very lengthy marriage.
Apparently there have been no problems with regard to the immoderate use of alcohol or drugs or controlled substances or instances of physical violence.
The defendant's testimony was to the effect that the plaintiff refused to pay for medical or dental insurance for her; merely told her that if she was desirous of having it incident to any employment that he held that she would have to pay for her share.
According to the testimony, on one occasion the plaintiff told the defendant that he wished that she would have an affair so he could feel CT Page 6835 better about himself
The Pfizer's shares shown on the defendant's financial affidavit were purchased in 1997 according to the testimony. Subsequently there was a split of the shares. The value at the present time was indicated to be in the neighborhood of $14,000.00 to $15,000.00. As noted earlier, the shares are pledged to secure the debt to Buscetto.
The defendant has no life insurance.
The business located in Yantic, the space is leased. The defendant has ten people there in her employ.
The defendant paid the sum of $200.00 a month to the Tamborra family for the efficiency apartment situated above the business activity.
The debts accumulated and owed to Buscetto went into the Yantic location.
The payments made by the lessees, Halidis and Galowzis, have been regularly met.
The defendant acknowledged that the plaintiff has never received any of the payments made pursuant to the terms and conditions of the lease.
The witness Peter Maneri was called on behalf of the plaintiff.
This witness prepared tax returns for the defendant He has been doing the defendant's returns for the last four or five years. This witness is a certified public accountant. He prepares personal and corporate tax returns for the defendant.
This witness does not do audits.
This witness relies on information provided to him by the clients that he represents.
Peter Maneri has been certified as a public accountant for the last eight years. He has had occasion to value businesses. The witness described five or six different ways that businesses may be valued including book value.
This witness reviewed the 1997, 1998, 1999 and 2000 tax returns. They were prepared on the basis of information provided to him by the defendant.
The witness Maneri characterized the present business being conducted CT Page 6836 by the defendant as having a negative cash flow and indicated that the business known as Rena's Pizza is not a moneymaking operation.
The witness felt that the value of the business was questionable and that the defendant had funded the business to the extent of $145,000.00 and money was due and owing to the defendant.
The plaintiff's accountant is the firm of Bokoff Goldblatt.
The witness Maneri testified as to the manner in which he prepares returns and observed that he felt that the defendant was truthful in all respects on the basis of information provided or inquiry made. He observed no irregularities regarding the returns and apparently subscribed to accepted methods of accounting.
The witness Maneri indicated that the defendant uses a computer system called "Quick Books", acknowledged that records can be altered but again observed that the Yantic business is a negative cash flow and has been for the last three years.
The witness opined that businesses cannot indefinitely run at a loss and still be successful.
The witness Maneri indicated that it was on the basis of his suggestion that the valuation appeared on the defendant's financial affidavit as concerns the worth of the business; to wit, between $25,000.00 and $50,000.00.
The witness testified that the defendant keeps the business afloat by continually putting in more of her own money.
The witness is an accredited and licensed member as a certified public accountant. He indicated that the business in which the defendant is involved is labor intensive, that all information inquired of by this witness of the defendant was provided and everything necessary to properly prepare the requisite returns was provided.
This witness testified as concerns the sale of a business comparable to the one operated now by the defendant which sold in the neighborhood of between $40,000.00 and $50,000.00.
The witness Maneri has a college degree, passed the requisite examination that must be undertaken to be an accredited certified public accountant.
The defendant in addition to the foregoing testified that she has no CT Page 6837 safety deposit box of her own, that one was acquired some time ago, but that was for her parent mother.
Certain check registers were offered as concerns payment by the defendant's business for the safety deposit box but it appears that the safety deposit box in question was not for the purpose of the defendant individually.
There was testimony to the effect that 20 years ago the defendant invested a small amount, a couple of thousand dollars, in a business entity in Vernon. The business subsequently closed.
The defendant acknowledged that during the life of the mortgage on the marital residence that the plaintiff has been employed full time. The defendant indicated that notwithstanding the fact that her business has a negative cash flow, that she has no present intentions of closing it.
At an early point in the marriage of the parties; to wit, 1975-1976, the IRS seized somewhere between $1,000.00 and $5,000.00 regarding tax obligations and delinquencies basically attributable to the conduct of the plaintiff's business activities in the automobile field.
No satisfactory explanation was made to the court with regard to why the plaintiff continued to refuse to renegotiate the outstanding mortgage on the home of 14.75%. Rates substantially lower than that, as much as 50% less, have been available on the market and it would seem that the continued payment of that extremely high rate redowns only to the benefit of the bank.
The defendant acknowledged or represented that on occasion the plaintiff was reluctant or would decline to go to family funeral activities.
The defendant acknowledged that her business does pay for some of her individual and personal expenses.
Certain exhibits were offered with regard to repairs at the home.
The defendant in describing her abilities in the field of computers testified that she was computer illiterate.
The defendant acknowledged that incident to requests for disclosure and production or in depositions that everything requested had been made available to counsel for the plaintiff including business records, credit cards, check register, personal and corporate tax returns, phone bills. CT Page 6838
From the financial affidavits filed with the court by the plaintiff and the defendant, the court finds from the plaintiff's financial affidavit that he is assistant service manager at Don Mallon Chevrolet Olds Cadillac Automobile Agency. The financial affidavit discloses that his gross weekly wage is $466.00; deductions for federal tax, FICA, State, medical and dental and 401K total $197.00 for a net of $269.00
The 401K deduction is $28.00 a week.
In addition to his regular base compensation the plaintiff receives a bonus and on a weekly basis it is computed at $199.00; gross deductions $61.00 for a net of $138.00 for a total weekly net income of $407.00.
The plaintiff claims weekly expenses amounting to $392.00 a week.
The real estate at 43 Eager Road in North Franklin jointly owned by the parties is valued at $99,940.00; mortgage, $23,694.00, for a total 100% equity of $76,246.00.
The plaintiff shows an interest in premises known as 30 Taftville-Occum Road valued at $78,571.00; mortgage debt, $60,787.00, for a 100% equity of $17,784.00; the title is in joint names.
The plaintiff shows ownership of a 1969 Chevrolet motor vehicle valued at $600.00 free and clear; a 1975 Harley Davidson motorcycle valued at $1,200.00. The testimony indicated that the value thereof would be considerably in excess of that.
Eastern Savings and Loan checking, $123.00.
The plaintiff shows ownership of one share of Pfizer stock; value unknown.
The plaintiff has life insurance; the face amount of which is $10,000.00; no cash value shown.
The plaintiff has a 401K valued at $19,941.00.
The plaintiff claims an equitable interest in Rena's Pizza, Inc. and Halidis/Galowzis note for a total of all assets excluding any claim with regard to equitable interests of $115,894.00.
Schedule A on the plaintiff's financial affidavit reflects liabilities and debts to creditors which total $29,964.00. These debts are debts due bank, credit card, the IRS and counsel. CT Page 6839
From the defendant's financial affidavit identified as Defendant's Exhibit No. 12, the court finds the defendant is the owner of a restaurant business known as Rena's Pizza, Inc., that her gross weekly wage from her employment at the business is $245.00; deductions for withholding, FICA, medicare and Connecticut tax, $36.99 for a net of $208.01.
Additional income from the Halidis/Galowzis lease, $346.15 and from the same parties Halidis/Galowzis, the note with regard to the sale of the business previously undertaken, $335.98 for a total from other sources of $682.13; certain deductions therefrom, $410.81, for a net weekly income of $479.33.
Weekly expenses are shown as $418.48.
The defendant shows considerable debt to Michael Buscetto, Michael's Dairy, and credit card indebtedness which totals $80,173.89.
The defendant values the 43 Eager Road, Franklin property in the same manner as the plaintiff, $99,940.00. The defendant shows the mortgage obligation as $22,881.00, which is slightly at variance with the figures shown by the plaintiff for her one-half equity share valued at $38,530.00.
The defendant shows her interest in the 30 Taftville-Occum Road, Norwich property valued at $78,571.00 with a mortgage obligation of $60,787.00, her one-half equity being valued at $8,892.00. This appears to be in substantial conformity with the plaintiff's figures.
The defendant shows a 1994 Dodge Caravan valued at $3,000.00 free and clear, a 1984 Chevrolet pickup valued at $200.00 free and clear.
The defendant values the business known as Rena's Pizza, Inc., at between $25,000.00 and $50,000.00; miscellaneous household furniture, etc., $500.00; $200.00 in the bank.
Ownership of 181 shares of Pfizer which admittedly split after being initially acquired by the defendant valued as earlier reflected in the memorandum in the neighborhood of $15,000.00.
The defendant shows the balance due on the Halidis/Galowzis note incident to the purchase of the business, $72,775.00; total cash value of all assets for the defendant, $181,997.65.
From the health form the court notes that this was the second marriage for each of the parties; that the plaintiff's education extended through CT Page 6840 the second year of high school and the defendant's through completing high school.
The health form verifies the date of the marriage as May 20, 1970 and indicates that the approximate date that the couple separated was August of 1999.
From the income tax returns filed by the parties, reference being made to Defendant's Exhibit 10, and starting in 1996, the court notes the State of Connecticut return filed by the plaintiff and the defendant indicated a federally adjusted gross income of $25,427.00.
The 1996 S Corporation return filed for Rena's Pizza, Inc., showed gross receipts or sales, $400,041.00, but the business apparently operated at a loss for that year to the amount of $7,692.00.
The 1997 S Corporation return for Rena's Pizza, Inc., showed gross receipts of $422,296.00. Here again, the corporation apparently experienced a loss in the amount of $7,004.00.
The 1997 income tax filed by the plaintiff and the defendant jointly showed total income for that year of $60,777.00.
The 1998 return for the plaintiff and the defendant reflected total income of $55,150.00.
Here again the business operated by the defendant showed a loss.
In 1998 the S Corporation return for Rena's Pizza, Inc., showed gross sales or receipts, $447,043.00. Again, the business operated at a loss of $15,942.00.
The 1999 income tax return for the defendant filing singly showed income from wages, salaries, etc., $12,740.00; taxable interest, $7,503.00; dividends of $168.00; capital gain, $9,852.00. The business, again, operated at a loss of $24,966.00 so that the total income for that return was $5,297.00.
The 1999 S Corporation tax return for Rena's Pizza, Inc., gross receipts or sales, $420,174.00. Again the business operated at a very modest loss.
For the year 2000, Rena's Pizza, Inc., the S Corporation return, gross receipts or sales, $411,069.00 and again the business operated at a fairly substantial loss, $37,326.00 for the year. CT Page 6841
The defendant's personal income tax return for the year 2000 again reflected wages taken from the business, $12,740.00; taxable interest, $6,676.00; modest dividends, refunds, capital gain of $10,670.00. Again the business operated at a substantial loss of $30,200.00.
Reference is made to Plaintiff's Exhibit No. 2, a certain lease dated June 3, 1996 by and between the plaintiff and the defendant as landlord and Halidis/Galowzis as tenant, this lease was for the term often years commencing June 3, 1996 and to run through June 3, 2006 providing for annual rent of $18,000.00 payable in equal monthly installments of $1,500.00 as provided for in the terms of the document. The leased property is that situated in the village of Occum and owned by the plaintiff and the defendant jointly and the location at which the defendant formerly operated a pizza business.
Plaintiff's Exhibit No. 1 is a document signed by the plaintiff and the defendant having to do with certain obligations incident to the aforementioned lease. The exhibit provides that "all monies, cash, checks, money orders and so forth shall be disclosed to both property owners and any profit shown shall be equally divided between both property owners". It provides for matters pertaining to the mortgage, taxes and allied matters.
The document refers to the fact that the ownership of the land and the improvements thereon shall remain as the same are prior to the inception of the lease; to wit, joint ownership of the parties.
Defendant's Exhibit D-5, checks issued by the witness Michael Buscetto, proprietor of Michael's Dairy, to various suppliers who provided either goods and services or equipment to the defendant.
Plaintiff's Exhibit 2 is generally to the same effect.
The advances by Buscetto were of some consequence either for refrigeration, cooling or matters of like nature. The checks were in the amount of $2,967.00, $7,060.00, $2,967.00 and $7,060.00.
During the course of the proceedings references were made to telephone charges and bills and reference being made to Plaintiff's P-10. It would appear, and the defendant has acknowledged, that some of the telephone charges and the number thereof are attributable to her business entity.
Plaintiff's Exhibit 11 is in the same vein having to do with expenses incurred or payment made by the defendant with proceeds from the business for personal obligations. CT Page 6842
Defendant's Exhibit 2, letter from the defendant's counsel to the plaintiff's counsel having to do with the filing of the 1999 income tax return and matters relating thereto.
Defendant's Exhibit D-3 is the plaintiff's W-2 for the year 2000 showing his compensation from Mallon Chevrolet to be $33,517.25.
Defendant's Exhibit 4 indicating figures and breakdown with regard to bonus payments that the plaintiff receives in addition to his regular base compensation.
Defendant's Exhibit 6, copies of checks from Michael Buscetto or Michael's Realty to Gladys Dorr, the defendant, or her business entity, Rena's Pizza, Inc., one for $4,000.00 another for $10,000.00.
Defendant's Exhibit 7 is a copy of the warranty deed of Tusia to Richard E. Dorr and Gladys L. Dorr as concerns the premises located on the easterly side of Eager Road. The same exhibit contains a copy of the mortgage deed of the plaintiff and the defendant to Norwich Savings Society in the original amount of $54,800.00. This mortgage deed indicates the amount of the monthly payment, $691.28. The court notes that the space providing for the rate of interest was not filled in on the mortgage instrument.
Defendant's Exhibit 8, the business purchase agreement, dated June 3, 1996 by and between the defendant and the purchasers of the business Halidis and Galowzis as concerns the business premises located at 30 Occum Road known as Rena's Pizza. The total price was $125,000.00 with provision made for payment at the time of the transfer and periodic and subsequent payments incident thereto.
Defendant's Exhibit No. 9, indenture of lease by and between Tamborra and the defendant. The premises described are known as 218 West Town Street in Norwich. The lease is for a term of five years commencing May 1, 1995 and expiring on the 30th day of April 2000. A five-year extension was provided for.
The court has reviewed Plaintiff's Exhibit 7 entitled "Rena's Universal Pizza Balance Sheet Comparison".
The court has viewed Plaintiff's Exhibit 3 consisting of nine photographs having to do with the defendant's former or part-time residence and the contents thereof.
Also Plaintiff's 4, the catering Chevrolet pickup truck used by the defendant. CT Page 6843
Plaintiff's Exhibit 5, the structure at which the pizza facility presently occupied and conducted by the defendant exists.
Plaintiff's Exhibit 6 is a series of photographs that depict the efficiency apartment where the defendant spends a great deal of her time which is located on the second floor of the premises where she conducts business. It shows the nature of the facilities, certain equipment and the premises that are located on the first floor and the general layout of the business that is conducted on the ground floor.
Defendant's Exhibit No. 13 shows a portion of the interior of the residence formerly jointly occupied by the plaintiff and the defendant. The same depicting an area that needs repair.
Defendant's Exhibit D-1 purports to show a sign affixed to the outer door of the sleeping quarters of the plaintiff at the Eager Road property.
Plaintiff's Exhibit Nos. 8 and 9, sheets from the check register show various entries having to do with payments made incident to the conduct of the business, bank book balance control, purchases for food, supplies and matters of like nature and totals.
Plaintiff's 9 shows also a $5,000.00 repayment loan to the defendant from the business.
 Discussion
This is a marriage of 31 years. The second marriage for both parties. Both of the parties had children issue of the prior marital relationships. One child issue of this marriage, an adult daughter Diana, born August 8, 1974. Fortunately, the relationship between the plaintiff and the defendant and the daughter Diana is reasonably good.
The petition for the dissolution was initiated by the plaintiff husband.
There has apparently been no warmth or intimacy in this marital relationship for many years.
Admittedly the defendant's son Michael who was a part of the household until he left at age 15 was a problem. Both the plaintiff and the defendant endeavored to cope with it but it was beyond their ability to do so.
The plaintiff on occasion told the defendant that he, in his words, CT Page 6844 wished that she would have an affair, indicated that he had a girlfriend and there was some other small problems between the parties insofar as the conduct of the plaintiff is concerned.
The plaintiff during his continuing working lifetime has served with the Norwich Police Department for a considerable period of time and subsequent to that has been involved in two automotive business entities which failed and subsequently the plaintiff has participated as an employee as a service manager in a number of different automobile agencies.
The defendant manifestly has been a hard and diligent worker and the plaintiff for all intents and purposes from a realistic point of view has not actively participated in the business endeavors of the defendant. The same being the Taftville-Occum Road property and the West Town facility, both of which involved a pizza-type activity.
The defendant's hours have been long; seven days a week for a long period of time.
The plaintiff, although he had the opportunity to do so, has never realistically participated in the conduct of the business entities undertaken by the defendant.
Since 1985 the parties have lived separate existences even though they may have been under the same roof at various times.
The court has touched on the outstanding mortgage on the Eager Road property and the rate thereof. It seems incomprehensible that the parties would not have joined together in a common effort to rewrite the mortgage which could have cut the interest rate in half.
It is difficult also to understand why the plaintiff would not endeavor more actively and charitably to see that the defendant was covered for medical purposes under the coverage available to him incident to his employment with Mallon Chevrolet.
It is true that the plaintiff offered the defendant the opportunity to do so but at her separate cost and charge.
The business entity presently being operated by the defendant admittedly has been at least in part a losing activity. The defendant has plowed considerable sums into the business to keep it going. In part the loans from the witness Buscetto went into the business.
The testimony indicates that insofar as the corporate entity is CT Page 6845 concerned, Rena's Pizza, Inc., that the defendant is the sole stockholder and the sole party in interest with regard to that corporation. The plaintiff never had anything to do with the corporation.
The court has noted the value of the restaurant equipment as concerns the property now being operated by Halidis/Galowzis and that sale by the defendant of course included furnishings, fixtures, equipment, good will, covenant not to compete and matters of like nature.
The agreed value of the 30 Taftville-Occum Road property being $78,571.00 with a mortgage of $60,787.00, the equity really is relatively modest.
The defendant as earlier noted did all of the groundwork arrangements with regard to financing and kept the entity being a viable economically feasible activity which is represented in the sale and lease.
The plaintiff's sole participation with regard to the lease was incident to signing the paperwork.
On the basis of the evidence presented to the court in this trial of three days, there was nothing to suggest any improper conduct on the part of the defendant. The defendant's greatest fault it would seem would be that she worked day and night trying to make the business a success and keep the economic ship afloat.
As noted, the plaintiff is age 64; the defendant is age 58. Their educational attainments are not outstanding.
The court has taken note of some medical problems besetting the plaintiff pertaining to bladder and colon problems. The defendant fortunately is apparently relatively free from medical problems and fairly healthy.
As earlier noted, there was never any formal order of alimony entered in this file from the initiation of the petition to the present time. The record discloses that the plaintiff did give the defendant $200.00 a week for a long period of time and then as of July 2000 reduced the same to $108.00.
Neither the plaintiff nor the defendant has any near term intention of retiring.
Clearly the marital home and residence of the parties at 43 Eager Road in Franklin was jointly maintained and supported by the efforts by both of the parties. It is unfortunate that the mortgage was not rewritten CT Page 6846 because the present equity in the property could have been greatly enhanced. The mortgage rewrite was prevented by the plaintiff being stubborn and uncompromising.
One of the problems with which the court is beset mindful of the interest rate on the existing mortgage is whether it would be realistic for either of the parties to try to have that mortgage instrument continue.
The court notes that the 181 shares of Pfizer stock purchased by the defendant some time ago out of earnings from her business activity is now held by the witness Buscetto as security for loans outstanding and is pledged incident thereto although admittedly there is no paper evidence as concerns the relationship but the physical custody of the certificates is with the witness Buscetto.
With the exception of the equity interest in the Eager Road property. and the plaintiff's 401K and motor vehicles, it would appear that the other assets that have been made known to the court have been primarily the result of the hard work and faithful diligence of the defendant to which objectively the court feels the plaintiff has not materially contributed.
If left to her own devices, according to the defendant's testimony, she would have been content to have the marital relationship continue. Manifestly the wishes of one of the parties as concerns the other are not controlling but the court notes the plaintiff's indication that he wished to make what he can as concerns the rest of his life.
Both of the attorneys representing the parties in this proceeding have submitted post trial memorandums and the court has carefully reviewed the same. The court has also carefully weighed and considered the position of the parties with regard to periodic alimony.
No marriage is perfect but in trying to resolve the issue of fault or why the marriage broke down, the court is inclined to the view that the defendant's only fault was working too hard over a period of 16 years in economic endeavors, while the plaintiff was content to coast and while admittedly steadily employed made no contribution of any consequence to the accumulation of assets acquired by the defendant aside from the Eager Road property.
Any problems involving the defendant's son Michael were beyond the ability of the defendant to resolve and in any event the young man left the marital home at age 15. CT Page 6847
 The Law
The court has considered all of the statutes which apply in matters of this nature which would include without limitation the following: Connecticut General Statutes (C.G.S.) §§ 46b-81, pertaining to assignment of property and transfer of title, 46b-82, alimony, 46b-66a, conveyance of title to real property and 46b-62 regarding attorney's fees.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof, the testimony of all witnesses who appeared in the matter, all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station in life, the occupation and employability of each of the parties and the estate and needs of the parties, the educational status of each and their ability to realistically and economically sustain themselves and the proposed orders submitted to the court by counsel for the parties.
The court has considered the standards of living of the parties.
The court has considered the present respective financial positions of the plaintiff and the defendant and their prospects for future income and opportunities.
The Court enters the following orders:
The plaintiff is not a stockholder of Rena's Pizza, Inc., and the court directs that the plaintiff waive and refrain from making any claim in and to Rena's Pizza, Inc., the corporate entity and the corporate assets and stock certificates remain the sole and separate property of the defendant.
The defendant to hold plaintiff harmless as concerns any debts, taxes or liabilities incident to said corporation should any claim be made against him.
The plaintiff shall waive release and forego any interest in the Halidis/Galowzis note and any amounts remaining due thereon. The remaining amounts due thereon shall be the sole and separate property of the defendant. CT Page 6848
The plaintiff shall execute a good and sufficient deed releasing and conveying all and any interest he may have in real estate known as 30 Taftville-Occum Road to the defendant and the defendant shall be responsible for any balance due on the outstanding mortgage and hold the plaintiff harmless therefrom including taxes, insurance and other related costs.
The plaintiff shall waive, give up and assign and convey and set over any interest he may possess in and to the lease by and between the plaintiff and defendant and Halidis/Galowzis concerning the premises known as 30 Taftville-Occum Road to the defendant and the defendant shall hold the plaintiff harmless as concerns any liabilities incident to said lease.
The plaintiff and the defendant shall divide equally the equity in the real estate known as 43 Eager Road, Franklin.
The defendant shall pay to the plaintiff the sum of $38,530.00; the same representing one half of the equity in the Franklin property within 120 days from the date hereof and in the event that the defendant is unable to do so, the premises shall be then exposed for sale and the net proceeds remaining after the payment of the mortgage, any taxes or liens, broker's commission and attorney's fees shall be equally divided. The deed of conveyance may be either a quit claim deed or a warranty deed as determined by counsel for the parties and shall properly describe the premises conveyed according to deeds of record.
In the deed from the plaintiff to the defendant, the instrument may recite that the defendant assumes and agrees to pay the outstanding mortgage balance due the mortgage bank and to save the plaintiff harmless therefrom.
The defendant may retain the 181 shares of common stock of Pfizer's that she purchased some years ago.
The defendant may have the items of personal property shown on the attached list except for the coffee table and end tables in the living room of the Eager Road property which shall remain the property of the plaintiff. See attached schedule.
In addition, the plaintiff may retain all the remaining items and furnishings located in the marital residence.
The plaintiff may retain his 1969 Chevrolet Station Wagon and his 1975 Harley Davidson motorcycle. CT Page 6849
The plaintiff may retain his Eastern Savings Loan checking account.
The plaintiff may retain his one share of Pfizer common stock.
The plaintiff may retain his life insurance and any cash value thereof and may designate any beneficiary he chooses.
The plaintiff may retain his 401K valued at $19,941.00.
The defendant has no retirement plan.
The plaintiff shall be responsible for the obligations, liabilities and debts shown on his financial affidavit totaling $29,964.00.
The defendant shall be responsible for the obligations, liabilities and debts shown on her financial affidavit totaling $80,173.89 and in addition thereto the additional obligation of $4,000.00 unlisted to Buscetto and the judgment lien of $281.00 to Lawrence and Memorial Hospital.
As to the issue of alimony which the court has carefully considered mindful of the length of the marriage and mindful of the suggestions made by both counsel in their post trial briefs, the court enters no order of alimony as to either the plaintiff or the defendant.
Should the defendant be so inclined, the plaintiff shall cooperate in allowing or assisting her in prosecuting any application for medical or dental coverage available incident to his employment for the allowable time frame but at her sole cost or expense.
The court enters no order as concerns attorney's fees.
Each party shall be responsible for their own counsel fees and costs.
The plaintiff may retain and receive any benefits subsequently granted or awarded to him incident to his worker's compensation claim free from any claim from the defendant.
The court grants the relief prayed for and dissolves the marriage and declares each of the parties to be single and unmarried.
Austin, JTR
 SCHEDULE CT Page 6850
My Complete Bed Room Set Clothing Poster Lamps (Grandmothers) Coffee Table and End Tables from Main Living Room Knick Knacks Sheers (Curtains) Living Room and My Bedroom (Matching) Small Wares from the Kitchen Dishes, Pots Pans, etc. Cook Books Dresser (Down Stairs) All Children's Books from First Marriage Few Children's Videos Old Table, Chairs, Ice Box, Stove from the Garage Stainless Work Table (Restuarant) from the Garage Sewing Machine and Materials Floor Mixer (Restaurant) in Garage Broken Mirror (from My Bedroom) Drapes in Downstairs Closet Television — (there are 3; 1 — large 2 — small) I'd like small one from spare room